UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| STACY ANN POTTER GIBBONS,<br><br>   Plaintiff,<br><br> v.<br><br>COMMISSIONER OF SOCIAL SECURITY,<br><br>   Defendant. | Case No. 1:21-cv-00741-EPG<br><br>FINAL JUDGMENT AND ORDER REGARDING PLAINTIFF'S SOCIAL SECURITY COMPLAINT<br><br>(ECF Nos. 1, 15). |

  This matter is before the Court on Plaintiff's complaint for judicial review of an unfavorable decision by the Commissioner of the Social Security Administration regarding her application for disability insurance benefits. The parties have consented to entry of final judgment by the United States Magistrate Judge under the provisions of 28 U.S.C. § 636(c) with any appeal to the Court of Appeals for the Ninth Circuit. (ECF No. 10).

  Plaintiff argues that (1) the ALJ improperly rejected her testimony and (2) that the ALJ's step-four finding is not supported by substantial evidence. (ECF No. 15, pp. 3-4). Having reviewed the record, administrative transcript, the briefs of the parties, and the applicable law, the Court finds as follows:

**I.   ANALYSIS**

Plaintiff first argues that the ALJ failed to provide specific, clear and convincing reasons for discounting her testimony about her symptoms. (*Id.* at 7). The Ninth Circuit has provided the following guidance regarding a plaintiff's subjective complaints:

> Once the claimant produces medical evidence of an underlying impairment, the Commissioner may not discredit the claimant's testimony as to subjective symptoms merely because they are unsupported by objective evidence. *Bunnell v. Sullivan*, 947 F.2d 341, 343 (9th Cir. 1991) (en banc); *see also Cotton v. Bowen,* 799 F.2d 1403, 1407 (9th Cir. 1986) ("it is improper as a matter of law to discredit excess pain testimony solely on the ground that it is not fully corroborated by objective medical findings"). Unless there is affirmative evidence showing that the claimant is malingering, the Commissioner's reasons for rejecting the claimant's testimony must be "clear and convincing." *Swenson v. Sullivan,* 876 F.2d 683, 687 (9th Cir. 1989). General findings are insufficient; rather, the ALJ must identify what testimony is not credible and what evidence undermines the claimant's complaints.

*Lester v. Chater,* 81 F.3d 821, 834 (9th Cir. 1995), *as amended* (Apr. 9, 1996). Additionally, an ALJ's reasoning "must be supported by substantial evidence in the record as a whole." *Johnson v. Shalala*, 60 F.3d 1428, 1433 (9th Cir. 1995). "Substantial evidence means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion" and "[w]here the evidence is susceptible to more than one rational interpretation, it is the ALJ's conclusion that must be upheld." *Morgan v. Comm'r of Soc. Sec. Admin.*, 169 F.3d 595, 599 (9th Cir. 1999) (citations omitted).

Here, the ALJ concluded that Plaintiff's "medically determinable impairments could reasonably be expected to cause the alleged symptoms." (A.R. 19). Accordingly, because there is no affirmative evidence showing that Plaintiff was malingering, the Court looks to the ALJ's decision for clear and convincing reasons, supported by substantial evidence, for not giving full weight to Plaintiff's symptom testimony. Here, the ALJ summarized the Plaintiff's subjective complaints and the reasons for discounting them as follows:

> The claimant complains of back pain, left knee pain, and hip pain. Her back pain radiates to the right lower extremity, causing pain, numbness, and weakness. She allegedly has difficulties with physical exertion, postural activities, and sleep. She allegedly needs to rest, take breaks, nap, change positions, and lie down often throughout the day. She allegedly has a tendency to fall. Her medications cause

> sleepiness, drowsiness, fatigue, nausea, vomiting, constipation, lightheadedness, dizziness, mood changes, slow reactions, forgetfulness, and concentration problems (Exhibits 2E, 4E, 8E, 11E, and hearing testimony).
>
> Diagnostic images of the claimant's lumbar spine taken in 2018 showed moderate to severe degenerative changes with moderate to severe foraminal stenosis at multiple levels (Exhibits 2F/7 and 4F/50). She underwent left total knee replacement for advanced degenerative joint disease in March 2019 (Exhibits 4F and 5F). X-rays of her right pelvis taken in October 2018 revealed degenerative changes in the hip (Exhibit 1F/15). She has also been diagnosed with right piriformis syndrome (e.g. Exhibit 19F). In addition, during the adjudicative period, she often had diminished ranges of motion in the lumbar spine and left knee, tenderness in the right piriformis, and abnormal gait (e.g. Exhibits 2F, 4F, 11F, 13F, 16F, 18F, and 19F).
>
> After careful consideration of the evidence, I find that the claimant's medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record for the reasons explained below.
>
> The evidence of record reflects that medications and heat help relieve her pain (Exhibits 4E, 2F, and 19F). With respect to her radicular symptoms, the record contains no relevant electrodiagnostic findings and she generally exhibited normal motor and sensory function (e.g. Exhibits 1F, 2F, and 19F). She allegedly has used a cane since 2018 and a walker since January 2020, but the treatment notes did not document a prescription for or regular usage of any assistive device. In fact, her own physician generally noted that she did not use any assistive device (e.g. Exhibits 2F and 19F). In addition, she is largely independent in personal care and is able to perform light cleaning (hearing testimony). Although she alleges various side effects from the use of medications, the evidence of record documents no significant, ongoing concerns from any medical source, which suggests that these side effects are generally mild. Side effects, such as sleepiness, drowsiness, fatigue, lightheadedness, and dizziness are also accommodated by the environmental limitations assessed herein.
>
> Given the claimant's allegations of totally disabling symptoms, one might expect to see some indication in the treatment records of restrictions placed on the claimant by the claimant's own medical sources. Yet a review of the record in this case reveals no restrictions recommended by the claimant's own medical sources. It is also emphasized that all of the medical opinions in the record . . . generally agreed the claimant could perform some work, despite her limitations.

(A.R. 19-20).

The first reason relied on by the ALJ to discount Plaintiff's testimony is that medical evidence showed that Plaintiff's medications and heat helped to relieve her pain. Conflicts

3

between a plaintiff's pain testimony and the medical record is a clear and convincing basis to discount her testimony. *See Parra v. Astrue*, 481 F.3d 742, 750 (9th Cir. 2007) (noting that inconsistencies between claimant's testimony and medical evidence was a proper ground to discredit testimony). And here, review of the record supports the ALJ's assessment.

As the ALJ noted, Exhibit 4E, a February 25, 2019 pain questionnaire filled out by Plaintiff, shows that some of her pain medication lowered her pain from a level 10 to a level 5-7 for a period of 4 to 6 hours, and she was able to take this medication as needed for the pain. (A.R. 210). Additionally, Exhibit 2F contains a January 30, 2019 medical record from Dr. Kyle Heron, noting that "[r]est, heat and medications help [relieve] [Plaintiff's] pain" and that Plaintiff "has had prior Triple blocks with >90% pain relief." (A.R. 303). Likewise, Exhibit 19F contains various medical records noting that Plaintiff obtained pain relief from treatment. (*See*, *e.g.*, A.R. 931 (noting that heat and medications help to relieve Plaintiff's pain), A.R. 934 (noting that medial branch blocks relieved 85% of pain for two days thus far)). While the medical records reflect that Plaintiff's pain relief was temporary, *e.g.*, from a number of hours to days at a time, even temporary pain relief from a number of treatments is a valid basis to discount Plaintiff's testimony concerning the degree of pain she experienced.

The next reason relied on by the ALJ is that Plaintiff's radicular symptoms were unsupported by electrodiagnostic findings and that the medical records revealed generally normal motor and sensory function. As to the lack of supporting electrodiagnostic findings, the ALJ was correct to cite this as one factor, among others, to discount Plaintiff's pain testimony. *See Burch v. Barnhart*, 400 F.3d 676, 681 (9th Cir. 2005) ("Although lack of medical evidence cannot form the sole basis for discounting pain testimony, it is a factor that the ALJ can consider in his credibility analysis."). Moreover, the ALJ correctly pointed out that medical records indicated that Plaintiff had normal motor and sensory function, which could be reasonably be construed as inconsistent with her debilitating claims of pain in her back, knee, and hip. (A.R. 261 (noting that Plaintiff had normal range of motion in her right ankle, knee, and hip with some pain); 315

(noting "[m]otor is intact"); 988 (noting "[s]ensation intact")).

The next reason relied on by the ALJ is that, although Plaintiff allegedly used a cane and walker, treatment notes did not document a prescription for an assistive device or that Plaintiff regularly relied on one. As for the lack of a prescription, Defendant concedes that the ALJ was wrong to say there was none, as the record reflects that Plaintiff did have a prescription for a walker with a seat as of February 12, 2019. (A.R. 28); (ECF No. 17, p. 8). Even so, this prescription for an assistive device was to help Plaintiff recover from her knee surgery and there is nothing to indicate that it was prescribed for a permanent impairment. (A.R. 38-39). In fact, as the ALJ correctly observed, at other times in the relevant period, that medical records often indicated that Plaintiff did not use an assistive device. (A.R. 304, 931, 950, 954, 968 (noting that Plaintiff "does not use a device")).

The next reason relied on by the ALJ is that Plaintiff was largely independent in personal care and could perform light cleaning. The Court rejects this rationale as Plaintiff's modest ability to perform personal care, such as shower, and to clean, such as dusting mirrors, is not inconsistent with Plaintiff's testimony about the pain she experienced nor her need to take breaks after physical exertion. (A.R. 36 (testifying that while she could clean countertops, she could not vacuum, mop, or clean toilets, nor could she perform tasks that required her to bend over); 40 (testifying that she could walk for about half a block before needing to stop and rest)); *see Fair v. Bowen*, 885 F.2d 597, 603 (9th Cir. 1989) (concluding that "many home activities are not easily transferable to what may be the more grueling environment of the workplace, where it might be impossible to periodically rest or take medication").

The next reason relied on by the ALJ is that Plaintiff's side effects from the medication were not documented as presenting serious ongoing concerns in the record, suggesting that the side effects were generally mild, and those side effects were accommodated for in the limitations that the ALJ assessed. While Plaintiff counters that a medical record from PA-C Bravate documented Plaintiff as having "malaise/fatigue, nausea, dizziness, weakness, depression, and

insomnia," the cited record simply lists these as symptoms, and does not link them to side effects that Plaintiff experienced from her medications. (ECF No. 15, p. 10 (citing A.R. 646)). Nor does this record opine on the severity or duration of these symptoms. The ALJ properly considered the lack of such evidence as one factor in discounting Plaintiff's testimony. *See Orteza v. Shalala*, 50 F.3d 748, 750 (9th Cir. 1995) ("An ALJ is clearly allowed to consider . . . the lack of side effects from prescribed medications" in discrediting subjective complaints.).

The last reason relied on by the ALJ is that Plaintiff's own medical sources failed to place restrictions on her and that state agency medical consultants uniformly concluded that Plaintiff could perform some work. It was reasonable for the ALJ to question the lack of limitations in the record placed on Plaintiff by her own medical sources in light of Plaintiff's claims of disabling symptoms, as such sources would have more opportunities than other medical sources to observe and opine on Plaintiff's limitations. Moreover, as elsewhere noted in the ALJ's opinion, state agency consultants—Dr. Nasrabadi and Dr. Bugg—both opined, based on record evidence, that Plaintiff had the ability to work. (A.R. 20, 56, 71). The ALJ was correct to conclude that the only opinions of record thus contradicted Plaintiff's testimony.

After considering the reasons given and the record as a whole, the Court finds that the ALJ provided specific, clear and convincing reasons supported by substantial evidence to discount Plaintiff's subjective symptom testimony.

Building off her previous argument, Plaintiff next argues that the step four finding—in which the ALJ concluded that Plaintiff could perform past relevant work as an account advisor based on her assessed limitations—was not supported by substantial evidence because the ALJ omitted Plaintiff's credible allegations, such as her side effects from medications, in posing hypothetical questions to the vocational expert. (ECF No. 15, p. 11); (*see* A.R. 21). However, as noted above, the Court has determined that the ALJ did not err in discrediting Plaintiff's subjective testimony and thus concludes that the ALJ set out the proper limitations for the vocational expert in determining whether Plaintiff could perform past relevant work.

## II. CONCLUSION AND ORDER

Thus, the decision of the Commissioner of Social Security is hereby affirmed. And the Clerk of the Court is directed to close this case.

IT IS SO ORDERED.

Dated: __March 31, 2022__   /s/ Erica P. Grosjean
UNITED STATES MAGISTRATE JUDGE